**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| RYAN SMITH, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| JERICO PICTURES, INC. d/b/a NATIONAL PUBLIC DATA, | |
| Defendant. | |

Plaintiff Ryan Smith, individually and on behalf of all others similarly situated, upon personal knowledge of facts pertaining to himself and on information and belief as to all other matters, by and through undersigned counsel, brings suit against Defendant Jerico Pictures, Inc. d/b/a National Public Data ("National Public Data" or "Defendant").

## NATURE OF THE ACTION

1.       This is a class action brought by Plaintiff on behalf of himself and all other individuals ("Class Members") who had their sensitive personally identifiable information ("PII")[1] exposed and disclosed to unauthorized third parties that accessed and removed the PII from Defendant's system between at least April and the summer of 2024, if not longer (the "Data Breach"). Indeed, Defendant admitted that a third-party bad actor attempted to hack into its data in December 2023.[2] The compromised PII includes the following: (1) first and last names; (2) phone numbers; (3) email addresses; (4) social security numbers; and (5) mailing addresses.[3]

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79.

[2] *See* National Public Data, *Security Incident*, https://nationalpublicdata.com/Breach.html (last visited Aug. 19, 2024).

[3] *Id.*

2.      Defendant is a background check company whose data is used by private investigators, consumer public record sites, human resources, and staffing agencies.[4]

3.      Defendant had numerous statutory, regulatory, contractual, and common law duties and obligations to keep Plaintiff's information confidential, safe, secure, and protected from unauthorized disclosure or access.

4.      On April 8, 2024, a criminal enterprise by the name of USDoD listed a 4-terabyte database containing 2.9 billion rows of data derived from National Public Data on an underground forum.[5] They allegedly listed the data for sale for $3.5 million.[6]

5.      Plaintiff brings this Complaint against Defendant for its failure to properly secure and safeguard the PII that it collected and maintained as part of its regular business practices and for its failure to timely notify consumers of the Data Breach.

6.      Defendant owed a duty to Plaintiff and Class members to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard their PII against unauthorized access and disclosure. Defendant breached that duty by, among other things, failing to implement and maintain reasonable security procedures and practices to protect consumers' PII from unauthorized access and disclosure. Indeed, after a hack attempt of the data in Defendant's possession in December of 2023, Defendant was on notice of the risk to said data, and Defendant should have increased or implemented security measures, but upon information and belief, failed to do so.

---

[4] National Public Data, *Security Incident*, https://nationalpublicdata.com/Breach.html (last visited Aug. 19, 2024).
[5] Jessica Lyons, *Crooks threaten to leak 3B personal records 'stolen from background check firm'*, THE REGISTER, https://www.theregister.com/2024/06/03/usdod_data_dump/ (last visited Aug. 19, 2024)
[6] *Id.*

7.     As a result of Defendant's inadequate security and breach of its duties and obligations, the Data Breach occurred, and Plaintiff's and Class members' PII was accessed and disclosed by a malicious, unauthorized actor. This action seeks to remedy these failings and their consequences. Plaintiff brings this action on behalf of himself, and all similarly situated individuals whose PII was exposed as a result of the Data Breach, which Defendant learned of in April of 2024, but did not publicly disclose until August of 2024.

8.     Plaintiff, on behalf of himself and all other Class members, asserts claims for negligence, breach of fiduciary duty, breach of confidence, invasion of privacy, as well as state statutory law claims, and seeks declaratory relief, injunctive relief, monetary damages, punitive damages, equitable relief, and all other relief authorized by law.

## PARTIES

9.     Plaintiff Ryan Smith is a citizen and resident of California. Plaintiff Smith greatly values his privacy and PII. Prior to the Data Breach, Plaintiff Smith took reasonable measures to maintain the confidentiality of his PII. On July 29, 2024, Plaintiff Smith received an identity monitoring alert through Chase Credit Journey indicating his Social Security number was exposed through Defendant's website www.nationalpublicdata.com. Because of the Data Breach, Plaintiff Smith has experienced an uptick in spam calls, emails, and text messages. For example, on August 1, 2024, Plaintiff Smith received an email about a purported CARE/Energy Savings Program associated with his electricity provider, PG&E.  Plaintiff Smith contacted PG&E, who confirmed the email was not from PG&E and that it was a scam attempt. After he ended the phone call with PG&E, Plaintiff Smith received a phone call and text message purporting to be about the Energy Savings Program with PG&E. Plaintiff Smith believes that the scam attempts following the Data Breach have become more sophisticated and harder to detect. Furthermore, Plaintiff Smith has been forced to, and will continue to, invest significant time monitoring his accounts to detect and

reduce the consequences of likely identity fraud. As a result of the Data Breach, Plaintiff is now subject to substantial and imminent risk of future harm. Plaintiff has spent approximately two hours monitoring his accounts for fraudulent activity and will continue to expend further time doing so in the days, weeks, and months following the filing of this Complaint.

10.     Defendant Jerico Pictures, Inc. d/b/a National Public Data is a Florida corporation with its headquarters and principal place of business located at 1801 NW 126th Way, Coral Springs, Florida 33071. National Public Data is a background check company whose data is used by private investigators, consumer public record sites, human resources, and staffing agencies.[7]

### JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(a) and (d), because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000.00) and is a class action in which one or more Class Members are citizens of states different from Defendant.

12.     The Court has personal jurisdiction over Defendant because it maintains its principal place of business in this judicial district, and thus is at home in this judicial district for general personal jurisdiction, conducts significant business in Coral Springs, Florida, and/or otherwise has sufficient minimum contacts with and intentionally avails itself of the markets in Florida.

13.     Venue properly lies in this district under 28 U.S.C. § 1391(b)(2) because, *inter alia,* Defendant maintains its principal place of business in this judicial district; Defendant transacts

---

[7] National Public Data, *Security Incident*, https://nationalpublicdata.com/Breach.html (last visited Aug. 19, 2024).

substantial business, has agents, and is otherwise located in this district; and/or a substantial part of the conduct giving rise to Plaintiff's claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

**A.      Overview of Defendant.**

14.      National Public Data is a background check company that obtains personal information from nonpublic databases, court records, state and national databases, and other repositories.[8] Its data is utilized by private investigators, consumer public record sites, human resources departments, and staffing agencies.[9]

15.      In the ordinary course of its business, Defendant collects, stores, maintains, and uses consumers' PII to derive a substantial economic benefit from that PII.

16.      Upon information and belief, Plaintiff and Class members are neither current nor former customers of Defendant, but rather are individuals who had their PII targeted, collected, and later sold by Defendant from nonpublic sources without their consent.

17.      Upon information and belief, Plaintiff's, and Class members' PII was entrusted to other unknown nonpublic sources and was then provided to Defendant by these sources for business purposes and for the benefit of Defendant and the unknown sources. Defendant collected and stored Plaintiff's and Class members' PII, including, at a minimum: (1) first and last names; (2) phone numbers; (3) email addresses; (4) social security numbers; and (5) mailing addresses.[10]

---

[8]      https://siliconangle.com/2024/08/12/2-7b-records-stolen-national-public-data-released-free-hacking-site/ (last visited Aug. 19, 2024)

[9] National Public Data, *Security Incident*, https://nationalpublicdata.com/Breach.html (last visited Aug. 19, 2024).

[10] *See id.*

18.     By obtaining, collecting, and storing Plaintiff's and Class members' PII, Defendant undertook a duty to keep such information safe, secure, and confidential, including adopting reasonable measures to do so.

19.     Despite not directly providing Defendant their PII, Plaintiff and Class members had a reasonable expectation that Defendant, in collecting and storing their PII, would comply with its obligations to safeguard their PII from unauthorized access.

20.     As a result of collecting and storing the PII of Plaintiff and Class members for its own financial benefit, Defendant had a continuous duty to adopt and employ reasonable measures to protect Plaintiff and the Class members' PII from disclosure to third parties.

**B.      The Data Breach.**

21.     Between April and the summer of 2024, a criminal gang named USDoD gained access to Defendant's system, and it was able to exfiltrate unencrypted PII of billions of individuals whose data is stored therein.[11] The Data Breach exposed the following types of sensitive personally identifiable information: (1) first and last names; (2) phone numbers; (3) email addresses; (4) social security numbers; and (5) mailing addresses.[12]

22.     On July 29, 2024, Plaintiff received an alert from Chase Credit Journey notifying him that his Social Security number was exposed as a direct result of the Data Breach.

23.     Defendant admitted that it and its systems were involved in hacking attempts by unauthorized third parties as early as December of 2023.[13]

---

[11] *See id.*

[12] *Id.*

[13] *Id.*

24.     Despite learning of the Data Breach in April of 2024, Defendant waited four months before notifying only some consumers—on August 16, 2024—that their highly sensitive PII had been acquired by a "third-party bad actor" by way of the Data Breach.

25.     On August 16, 2024, Defendant confirmed the Data Breach, but left many details and questions unanswered.[14] For example, Defendant failed to report how many people have been affected, offer any compensation or assistance to the people whose PII was exposed, or provide any avenues of direct contact for consumers to timely access more information regarding the Data Breach. At most, Defendant promised that it "will try to notify you [consumers] if there are further significant developments applicable to you [consumers]," but it failed to provide any estimated timeline or explain the extent of its purported efforts.[15]

26.     Thus, the Data Breach resulted from Defendant's failure to adequately protect and safeguard the PII entrusted to it through its provision of various sources to its customers.

**C.     Defendant Could Have Prevented the Data Breach.**

27.     Given the importance of protecting sensitive data from ransomware incidents, the United States Government has issued recommendations including existing federal government and private industry best practices and mitigation strategies.[16]

28.     Recognizing that "prevention" is the most effective action against data breaches caused by malicious third parties, the U.S. Government recommends that users and administrators protect their computer networks by taking a series of reasonable measures, including: "configur[ing] firewalls to block access to known malicious IP addresses;" "implementing

---

[14] *See id.*

[15] *Id.*

[16] *See generally* How to Protect Your Networks from RANSOMWARE, https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view, FBI (last visited Aug. 19, 2024).

Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder;" "[s]et[ing] anti-virus and anti-malware programs to conduct regular scans automatically;" "disabling Remote Desktop protocol (RDP) if it is not being used;" and "[c]ategoriz[ing] data based on organizational value and implement[ing] physical and logical separation of networks and data for different organizational units."[17]

29.     The U.S. Government recognizes that following one cybersecurity incident, the affected entity "should initiate measures to prevent similar incidents," including a "post-incident review of their response to the incident and assess the strengths and weaknesses of its incident response plan."[18]

30.     Industry standards and recommendations regarding cybersecurity abound and are well-known.  For example, the U.S. Commerce Department's National Institute of Standards and Technology (NIST) released cybersecurity recommendations as early as 2018, and the Secretary of Commerce at the time explained: "The voluntary NIST Cybersecurity Framework should be every company's first line of defense.  Adopting version 1.1 is a must do for all CEO's."[19]

31.     Although the NIST "framework was developed with a focus on industries vital to national and economic security[,] . . . . [i]t has since proven flexible enough to be adopted voluntarily by large and small companies and organizations across all industry sectors . . . ."[20]  The

---

[17] *Id.* at 3–4.
[18] *Id.* at 6.
[19] *NIST Releases Version 1.1 of its Popular Cybersecurity Framework*, NIST, (Apr. 16, 2018), https://www.nist.gov/news-events/news/2018/04/nist-releases-version-11-its-popular-cybersecurity-framework.
[20] *Id.*

NIST Cybersecurity Framework was publicly available, free, and widely discussed as a cybersecurity industry standard.[21]  The framework included detailed recommendations, including standards relating to Security Continuous Monitoring, where "[t]he information system and assets are monitored to identify cybersecurity events and verify the effectiveness of protective measures," which included ensuring that: "[t]he network is monitored to detect potential cybersecurity events;" "[m]alicious code is detected;" "[u]nauthorized mobile code is detected;" "[p]ersonnel activity is monitored to detect potential cybersecurity events;" "[e]xternal service provider activity is monitored to detect potential cybersecurity events;" "[m]onitoring for unauthorized personnel, connections, devices, and software is performed;" and "[v]ulnerability scans are performed."[22] Other detailed recommendations include that the "[d]etection processes and procedures are maintained and tested to ensure awareness of anomalous events," including ensuring that "[d]etection activities comply with all applicable requirements;" "[d]etection processes are tested;" "[e]vent detection information is communicated;" and "[d]etection processes are continuously improved."[23]

32.     Likewise, the Cybersecurity and Infrastructure Security Agency (CISA) has commonsensically recognized that "[i]nsecure technology and vulnerabilities in critical systems may invite malicious cyber intrusions, leading to serious potential safety risks."[24]  Thus, CISA recommends that organizations: "prioritize the importance of purchasing Secure-by-Design and

---

[21] *See id.*; *see also generally Framework for Improving Critical Infrastructure Cybersecurity*, NIST (Apr. 16, 2018) https://nvlpubs.nist.gov/nistpubs/CSWP/NIST.CSWP.04162018.pdf

[22] *Framework for Improving Critical Infrastructure Cybersecurity*, NIST (Apr. 16, 2018) https://nvlpubs.nist.gov/nistpubs/CSWP/NIST.CSWP.04162018.pdf at 38–40.

[23] *Id.* at 40.

[24] Cybersecurity and Infrastructure Security Agency, *Shifting the Balance of Cybersecurity Risk: Principles and Approaches for Security-by-Design and -Default*, CISA, (Apr. 13, 2023) https://www.cisa.gov/sites/default/files/2023-06/principles_approaches_for_security-by-design-default_508c.pdf at 3.

Secure-by-Default products," "establish[] policies requiring that IT departments assess the security of manufacturer software before it is purchased," and have their executive management support their IT departments' responsible purchasing decisions.[25]

33.    Defendant failed to meet minimum industry standards, including the above-described standards, failing to implement and maintain reasonable and appropriate data privacy and security measures to protect valuable, sensitive data that Defendant knew was a valuable target.

**D.    Defendant Knew that Criminals Target PII.**

34.    "Ransomware is the fastest growing malware threat," and "more than 4,000 ransomware attacks have occurred daily since January 1, 2016."[26]

35.    These ransomware attacks have become "more sophisticated and destructive."[27] To aid in preventing ransomware attacks, the U.S. Government has publicly shared detailed information regarding some of the top ransomware variants targeting U.S. companies: CryptoWall; CTB-Locker; TeslaCrypt; MSIL or Samas (SAMSAM); Locky; and links to other types of malware.[28] These ransomware attacks are publicized and reported globally.

36.    At all relevant times, Defendant knew, or should have known, Plaintiff's and all other Class members' PII was a valuable target for malicious actors. Despite such knowledge, Defendant failed to implement and maintain reasonable and appropriate data privacy and security

---

[25] *Id.* at 12. "'Secure-by-design' means that technology products are built in a way that reasonably protects against malicious cyber actors successfully gaining access to devices, data, and connected infrastructure." *Id.* at 4. "'Secure-by-Default' means products are resilient against prevalent exploitation techniques out of the box without additional charge." *Id.* at 5.
[26] *Id.* at 2.
[27] *Id.* at 6.
[28] *Id.* at 6–8.

measures to protect Plaintiff's and Class members' PII from cyberattacks that Defendant should have anticipated and guarded against.

37.     Moreover, because the cybercriminals attempted to hack Defendant's systems by no later than December 2023, but the Data Breach did not occur until April 2024 through the summer of 2024,[29] either Defendant had at least several months to detect these hacking attempts and to further comport with industry standards by implementing heightened security measures beyond the measures Defendant had previously used and/or Defendant's failure to identify the hacking attempts for at least several months prior to the Data Breach further evidences Defendant's failure to comply with industry standards.

38.     PII is a valuable property right.[30] The value of PII as a commodity is measurable.[31] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[32] American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[33] It is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black market," or the "dark web," for many years.

---

[29] *See* National Public Data, *Security Incident*, https://nationalpublicdata.com/Breach.html (last visited Aug. 19, 2024).

[30] *See* Marc van Lieshout, *The Value of Personal Data*, 457 International Federation for Information Processing 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible . . . ."), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.

[31] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE.COM (Apr. 28, 2014), http://www.medscape.com/viewarticle/824192.

[32] OECD, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD iLIBRARY (Apr. 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

[33] IAB Data Center of Excellence, *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, IAB.COM (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/.

39.     This information from various breaches, including the information exposed in the Data Breach, can be aggregated, and become more valuable to thieves and more damaging to victims.

40.     Consumers place a high value on the privacy of that data. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[34]

41.     Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

**E.     Theft of PII Has Grave and Lasting Consequences for Victims.**

42.     Theft of PII is serious. The FTC warns consumers that identity thieves use PII to exhaust financial accounts, receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[35]

43.     Identity thieves use personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[36] According to Experian, one of the

---

[34] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFORMATION SYSTEMS RESEARCH 254 (June 2011) https://www.jstor.org/stable/23015560?seq=1.

[35] *See* Federal Trade Commission, *What to Know About Identity Theft*, FEDERAL TRADE COMMISSION CONSUMER INFORMATION,
https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last visited Aug. 19, 2024).

[36] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 C.F.R. § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver"s license or identification number, alien registration number, government passport number, employer or

largest credit reporting companies in the world, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to among other things: open a new credit card or loan; change a billing or mailing address so the victim no longer receives bills and is thus unaware of any fraudulent activity; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use a debit card number to withdraw funds; obtain a new driver's license or government ID; use the victim's information in the event of arrest or court action.[37]

44.     With access to an individual's PII, criminals can do more than just empty a victim's bank account—they can also commit all manner of fraud, including obtaining a driver's license or official identification card in the victim's name but with the thief's photographs; using the victim's name and SSN to obtain government benefits; using the victim's health insurance to obtain medications or procedures; or filing a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's SSN, rent a house, or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[38]

45.     Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that most victims of identity crimes require at least more than one month to resolve issues stemming from identity theft and some victims require over a year.[39]

---

taxpayer identification number. *Id.*

[37] *See* Susan Henson, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself*, EXPERIAN (Sept. 1, 2017), https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/.

[38] *See id.*; Federal Trade Commission, *Warning Signs of Identity Theft*, IDENTITYTHEFT.GOV https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft.

[39] Identity Theft Resource Center, *2021 Consumer Aftermath Report*, IDENTITY THEFT RESOURCE CENTER (2021), https://www.idtheftcenter.org/identity-theft-aftermath-study/.

46.     Theft of SSNs also creates a particularly alarming problem for victims because those numbers cannot easily be replaced. In order to obtain a new number, a breach victim has to demonstrate ongoing harm from misuse of his SSN, and a new SSN will not be provided until after the harm has already been suffered by the victim.

47.     Due to the highly sensitive nature of SSNs, theft of SSNs in combination with other PII (*e.g.*, name, address, date of birth) is akin to having a master key to the gates of fraudulent activity. TIME quoted data security researcher Tom Stickley, who is employed by companies to find flaws in their computer systems, as stating, "If I have your name and your Social Security number and you don't have a credit freeze yet, you're easy pickings."[40]

48.     There may also be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used and it takes some individuals up to three years to learn that information.[41]

49.     It is within this harsh and dangerous reality that Plaintiff Smith and all other Class members must now live with the knowledge that their PII is forever in cyberspace and was taken by people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black market.

50.     Given the highly sensitive nature of the PII that Defendant obtained, collected, and stored, and given the crimes and fraud the PII can be used for, Defendant had even more of a duty to take reasonable measures and follow industry standards to safeguard that data.

---

[40] Patrick Lucas Austin, *'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME (Aug. 5, 2019), https://time.com/5643643/capital-one-equifax-data-breach-social-security/.

[41] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 Journal of Systemics, Cybernetics and Informatics 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

**F.      Damages Sustained by Plaintiff and the Other Class Members.**

51.     Plaintiff and all other Class members have suffered injury and damages, including, but not limited to: (i) a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; and/or (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face.

## CLASS ALLEGATIONS

52.     Plaintiff brings this action on behalf of himself and the following classes:

<u>Nationwide Class</u>: All residents of the United States who were notified by Defendant that their PII may have been compromised as a result of the Data Breach.

<u>California Subclass</u>: All residents of California who were notified by Defendant that their PII may have been compromised as a result of the Data Breach.

The foregoing classes are referred to herein, collectively, as the "Class."

53.     Excluded from the Class are: (1) the Judges presiding over the Action, Class Counsel, and members of their families; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or their parents, have a controlling interest, and their current or former officers and directors; (3) Persons who properly opt out; and (4) the successors or assigns of any such excluded Persons.

54.     **Numerosity**: The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, based upon information and belief, the Class consists of millions of individuals, as 2.9 billion consumer records were allegedly exposed in the Data Breach.

55. **Typicality**: All of Plaintiff's claims are typical of the claims of the Class because the named Plaintiff, like all other members of the Classes, had his PII compromised in the Data Breach, and all claims arise from the same uniform, core set of facts. Thus, Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class Members.

56. **Adequacy**: Plaintiff is an adequate Class representative because his interests do not materially or irreconcilably conflict with the interests of the Class that he seeks to represent, he has retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

57. **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and the Class. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of streamlined adjudication, economy of scale, and comprehensive supervision by a single court. Members of the Class can be readily identified and notified based on, *inter alia*, Defendant's records and databases.

58. **Commonality and Predominance:** The following questions common to all class members predominate over any potential questions affecting individual class members:

a. Whether Defendant had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and Class members' PII from unauthorized access and disclosure;

b. Whether Defendant knew or should have known that Plaintiff's and Class member's PII was at risk for data breaches caused by malicious third parties;

c. Whether Defendant failed to exercise reasonable care to secure and safeguard Plaintiff's and Class members' PII;

d. Whether Defendant breached its duties to protect Plaintiff's and Class members' PII;

e. Whether Defendant violated the various statutes alleged herein;

f. Whether Defendant failed to timely notify Plaintiff and Class; and

g. Whether Plaintiff and all other members of the Class are entitled to damages and the measure of such damages and relief.

59.     Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

**<u>CAUSES OF ACTION</u>**

**<u>COUNT I</u>**
**NEGLIGENCE**
**(On Behalf of the Nationwide Class or, Alternatively, the California Class)**

60.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

61.     Defendant owed a duty to Plaintiff and all other Class members to exercise reasonable care in safeguarding and protecting the PII in its possession, custody, or control.

62.     Defendant knew the risks of collecting and storing Plaintiff's and all other Class members' PII and the importance of maintaining secure systems. Defendant knew of the many data breaches that targeted data companies in recent years.

63.     Given the nature of Defendant's business, the sensitivity and value of the PII it maintains, and the resources at its disposal, Defendant should have identified the vulnerabilities to its systems and prevented the Data Breach from occurring.

64.     Defendant breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect PII entrusted to it—including Plaintiff's and Class members' PII.  Defendant failed, for example, to adequately encrypt Plaintiff's and Class members' PII.

65.     It was reasonably foreseeable to Defendant that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class members' PII to unauthorized individuals.

66.     But for Defendant's negligent conduct or breach of the above-described duties owed to Plaintiff and Class members, their PII would not have been compromised.

67.     As a result of Defendant's above-described wrongful actions, inaction, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff and all other Class members have suffered, and will continue to suffer, economic damages and other injury and actual

harm in the form of, *inter alia*: (i) a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; and/or (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face.

### COUNT II
### BREACH OF FIDUCIARY DUTY
**(On Behalf of the Nationwide Class or, Alternatively, the California Class)**

68.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

69.     Defendant received Plaintiff's and Class members' PII in confidence.  Plaintiff and Class members interacted with companies that utilized Defendant's services and trusted that those companies, and thereby Defendant, would protect that information. Plaintiff and Class members would not have provided the companies, and thereby Defendant, with this information had they known it would not be adequately protected. Defendant's acceptance and storage of Plaintiff's and Class members' PII created a fiduciary relationship between Defendant and Plaintiff and Class members. In light of this relationship, Defendant was obligated to act primarily for the benefit of individuals who entrusted their PII to it, which includes safeguarding and protecting Plaintiff's and Class members' PII.

70.     Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of their relationship. It breached that duty by failing to properly protect the integrity of the system containing Plaintiff's and Class members' PII, and otherwise failing to safeguard Plaintiff's and Class members' PII that it collected.

71.     As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of, or imminent threat of, identity theft; (ii) the compromise, publication, and theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII; (iv) lost opportunity costs associated with efforts attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII which remains in Defendant's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII compromised as a result of the Data Breach; and (vii) overpayment for the services that were received without adequate data security.

**COUNT III**
**BREACH OF CONFIDENCE**
**(On Behalf of the Nationwide Class or, Alternatively, the California Class)**

72.     Plaintiff realleges and incorporates by reference preceding paragraphs 1–59 as if fully set forth herein.

73.     At all relevant times, Defendant was fully aware of the confidential and sensitive nature of Plaintiff's and Class members' PII that it obtained from companies to which Plaintiff and Class members entrusted their PII.

74.     Defendant's relationship with Plaintiff and Class members was governed by terms and expectations that Plaintiff's and Class members' PII would be stored and protected in confidence and would not be disclosed to unauthorized third parties.

75.     Plaintiff and Class Members provided their PII to companies that utilized Defendant's services, and thereby to Defendant, with the explicit and implicit understanding that the PII would not be disseminated to any unauthorized third parties.

76.     Plaintiff and Class members provided their PII to companies that utilized Defendant's services, and thereby to Defendant, with the explicit and implicit understanding that adequate and reasonable precautions would be taken to protect that PII from unauthorized disclosure.

77.     Defendant voluntarily received in confidence Plaintiff's and Class members' PII with the understanding that PII would not be disclosed or disseminated to unauthorized third parties or to the public.

78.     Due to Defendant's failure to prevent and avoid the Data Breach from occurring, Plaintiff's and Class members' PII was disclosed to and misappropriated by unauthorized third parties beyond Plaintiff's and Class members' confidence, and without their express permission.

79.     As a proximate result of such unauthorized disclosures, Plaintiff and Class members suffered damages, including *inter alia*: (i) a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; and/or (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face.

**COUNT IV**
**INVASION OF PRIVACY**
**(Intrusion Upon Seclusion)**
**(On Behalf of the Nationwide Class or, Alternatively, the California Class)**

80.     Plaintiff realleges and incorporates by reference preceding paragraphs 1–59 as if fully set forth herein.

81.     Plaintiff and Class members had a reasonable expectation of privacy in the PII that Defendant disclosed without authorization.

82.     By failing to keep Plaintiff's and Class members' PII safe and disclosing PII to unauthorized parties for unauthorized use, Defendant unlawfully invaded Plaintiff's and Class members' privacy by, *inter alia*:

a.    intruding into Plaintiff's and Class members' private affairs in a manner that would be highly offensive to a reasonable person;

b.    invading Plaintiff's and Class members' privacy by improperly using their PII properly obtained for a specific purpose for another purpose, or disclosing it to some third party;

c.    failing to adequately secure their PII from disclosure to unauthorized persons; and

d.    enabling the disclosure of Plaintiff's and Class members' PII without consent.

83.     Defendant knew, or acted with reckless disregard of the fact, that a reasonable person in Plaintiff's and Class members' position would consider its actions highly offensive.

84.     Defendant knew that its systems and processes for collecting, managing, storing, and protecting PII entrusted to it were vulnerable to data breaches prior to the Data Breach.

85.     Defendant invaded Plaintiff's and Class members' right to privacy and intruded into Plaintiff's and Class members' private affairs by collecting their PII and disclosing their PII to unauthorized persons without their informed, voluntary, affirmative, and clear consent.

86.     As a proximate result of such unauthorized disclosures, Plaintiff's, and Class members' reasonable expectations of privacy in their PII were unduly frustrated and thwarted. Defendant's conduct amounted to a serious invasion of Plaintiff's and Class members' protected privacy interests.

87.     In failing to protect Plaintiff's and Class members' PII, and in disclosing that information, Defendant acted with malice and oppression and in conscious disregard of Plaintiff's and Class members' rights to have such information kept confidential and private.

88.     Plaintiff seeks injunctive relief on behalf of the class, restitution, and all other damages available under this Count.

**COUNT V**
**CALIFORNIA CONSUMER PRIVACY ACT**
**Cal. Civ. Code § 1798.100, *et seq.***
**(On Behalf of Plaintiff Smith and the California Class)**

89.     Plaintiff realleges and incorporates by reference preceding paragraphs 1–59 as if fully set forth herein.

90.     Plaintiff Smith brings this claim on behalf of himself and the California Class.

91.     Defendant is a corporation organized or operated for the profit or financial benefit of its owners. Defendant collects consumers' PII as defined in the California Consumer Privacy Act of 2018 ("CCPA"), Cal. Civ. Code § 1798.140(v)(1).

92.     Defendant violated Section 1798.150 of the CCPA by failing to prevent Plaintiff Smith's and California Class members' nonencrypted PII from unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violations of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

93.     Defendant has a duty to implement and maintain reasonable security procedures and practices to protect Plaintiff Smith's and California Class members' PII. As detailed herein, Defendant failed to do so.

94.     As a direct and proximate result of Defendant's acts, Plaintiff Smith's, and California Class members' PII, including names, Social Security numbers, and other sensitive records, was subjected to unauthorized access and exfiltration, theft, or disclosure.

95.     Plaintiff Smith and California Class members seek injunctive or other equitable relief to ensure Defendant hereinafter properly safeguards customer PII by implementing reasonable security procedures and practices. Such relief is particularly important because Defendant continues to hold customer PII, including Plaintiff Smith's and California Class members' PII. Plaintiff Smith and California Class members have an interest in ensuring that their PII is reasonably protected.

96.     A judicial determination of this issue is necessary and appropriate at this time under the circumstances to prevent further data breaches by Defendant and third parties with similar inadequate security measures.

97.     In compliance with the statute, on August 19, 2024, counsel for Plaintiff Smith provided written notice via certified mail to Defendant at its principal place of business of the intent to pursue claims for injunctive relief only under the CCPA and an opportunity for Defendant to cure. Plaintiff Smith's written notice set forth the violations of Defendant's duty to implement and maintain reasonable security procedures and practices alleged in this Complaint. After the 30-day notice period expires, Plaintiff Smith intends to amend this Complaint to seek all damages available under the CCPA.

98.     To date, Defendant has taken no action to remedy its misconduct or otherwise address the violations outlined in the written notices sent by Plaintiff Smith's counsel.

99.     As stated above, Plaintiff Smith and the California Class seek injunctive relief only at this time as well as attorneys' fees and costs.

### COUNT VI
**CALIFORNIA CONSUMER RECORDS ACT**
**Cal. Civ. Code § 1798.80,** *et seq.*
**(On Behalf of Plaintiff Smith and the California Class)**

100.    Plaintiff realleges and incorporates by reference preceding paragraphs 1–59 as if fully set forth herein.

101.    Plaintiff Smith brings this claim on behalf of himself and the California Class.

102.    "[T]o ensure that personal information about California residents is protected," the California legislature enacted Cal. Civ. Code § 1798.81.5, which requires that any business that "owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

103.    Defendant is a business that owns, maintains, and licenses PII within the meaning of Cal. Civ. Code §§ 1798.80(a) and 1798.81.5(b)), about Plaintiff Smith and California Class members.

104.    Businesses that own or license computerized data that includes PII are required to notify California residents when their PII has been acquired (or is reasonably believed to have been acquired) by unauthorized persons in a data security breach "in the most expedient time possible and without unreasonable delay." Cal. Civ. Code § 1798.82. Among other requirements, the security breach notification must include "the types of Personal Information that were or are reasonably believed to have been the subject of the breach." *Id.*

105.    Plaintiff Smith's and California Class members' PII includes Personal Information as covered by Cal. Civ. Code § 1798.82.

106.    Because Defendant reasonably believed that Plaintiff Smith's and California Class members' PII was acquired by unauthorized persons during the Data Breach, Defendant had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by Cal. Civ. Code § 1798.82.

107.    Defendant failed to fully disclose material information about the Data Breach, including the types of Personal Information impacted.

108.    By failing to disclose the Data Breach in a timely and accurate manner, Defendant violated Cal. Civ. Code § 1798.82.

109.    As a direct and proximate result of Defendant's violations of the Cal. Civ. Code § 1798.82, Plaintiff Smith and California Class members suffered damages, as alleged above.

110.    Plaintiff Smith and California Class members seek relief under Cal. Civ. Code § 1798.84, including actual damages and injunctive relief.

**COUNT VII**
**CALIFORNIA UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On Behalf of Plaintiff Smith and the California Class)**

111.    Plaintiff realleges and incorporates by reference preceding paragraphs 1–59 as if fully set forth herein.

112.    Plaintiff Smith brings this claim on behalf of himself and the California Class.

113.    Defendant is a "person" as defined by Cal. Bus. & Prof. Code §17201.

114.    Defendant violated Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL") by engaging in unlawful and unfair business acts and practices.

115.    Defendant's "unfair" or unlawful acts and practices include:

(a) Defendant failed to implement and maintain reasonable security measures to protect Plaintiff Smith's and California Class members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

(b) Defendant failed to identify foreseeable security risks, remediate identified security risks, and sufficiently improve security following previous cybersecurity incidents, as alleged herein. This conduct, with little if any utility, is unfair when weighed against the harm to Plaintiff Smith and California Class members, whose PII has been compromised;

(c) Defendant's failure to implement and maintain reasonable security measures also was contrary to legislatively declared public policy that seeks to protect consumers' data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTC Act, 15 U.S.C. § 45, California's Consumer Records Act, Cal. Civ. Code §1798.81.5, and California's Consumer Privacy Act, Cal. Civ. Code § 1798.100;

(d) Defendant's failure to implement and maintain reasonable security measures also resulted in substantial consumer injuries, as alleged above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because consumers could not have known of Defendant's grossly inadequate security, consumers could not have reasonably avoided the harms that Defendant caused;

(e) Defendant engaged in unlawful business practices by violating the FTC Act, 15 U.S.C. § 45, California's Consumer Records Act, Cal. Civ. Code §1798.81.5, California's Consumer Privacy Act, Cal. Civ. Code §1798.100, and common law; and

(f) failing to provide the Notice of Data Breach required by Cal. Civ. Code § 1798.82(d)(1).

116.    As a direct and proximate result of Defendant's unfair and unlawful acts and practices, Plaintiff Smith and California Class members were injured and suffered monetary and non-monetary damages, as alleged herein, including, but not limited to, fraud and identity theft; time and expenses related to monitoring their financial for fraudulent activity; an increased, imminent risk of fraud and identity theft; deprivation of value of access to their PII; and the value of identity protection services made necessary by the Data Breach.

117.    Defendant acted intentionally, knowingly, and maliciously to violate California's UCL, and recklessly disregarded Plaintiff Smith's and California Class members' rights.

118.    Plaintiff Smith and California Class members seek all monetary and nonmonetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair and unlawful business practices or use of their PII; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

**COUNT VIII**
**DECLARATORY RELIEF**
**28 U.S.C. § 2201**
**(On Behalf of the Nationwide Class or, Alternatively, the California Class)**

119.    Plaintiff realleges and incorporates by reference preceding paragraphs 1–59 as if fully set forth herein.

120.    An actual controversy has arisen and exists between Plaintiff and members of the Class, on the one hand, and Defendant, on the other hand, concerning the Data Breach and Defendant's failure to protect Plaintiff's and Class members' PII, including with respect to the issue of whether Defendant took adequate measures to protect that information. Plaintiff and Class members are entitled to a judicial determination as to whether Defendant has performed and is adhering to all data privacy obligations as required by law or otherwise to protect Plaintiff's and

Class members' PII from unauthorized access, disclosure, and use.

121.     A judicial determination of the rights and responsibilities of the parties regarding Defendant's privacy policies and whether they failed to adequately protect PII is necessary and appropriate to determine with certainty the rights of Plaintiff and the Class members, and so that there is clarity between the parties as to Defendant's data security obligations with respect to PII going forward, in view of the ongoing relationships between the parties.

## **PRAYER FOR RELIEF**

Plaintiff, individually and on behalf of the class members, by and through undersigned counsel, respectfully requests that the Court grant the following relief:

A.     Certify this case as a class action pursuant to Fed. R. Civ. P. 23, and appoint Plaintiff as the class representative and undersigned counsel as class counsel;

B.     Award Plaintiff and class members actual and statutory damages, punitive damages, and monetary damages to the maximum extent allowable;

C.     Award declaratory and injunctive relief as permitted by law or equity to assure that Class members have an effective remedy, including enjoining Defendant from continuing the unlawful practices as set forth above;

D.     Award Plaintiff and Class members pre-judgment and post-judgment interest to the maximum extent allowable;

E.     Award Plaintiff and Class members reasonable attorneys' fees, costs, and expenses, as allowable; and

F.     Award Plaintiff and Class members such other favorable relief as allowable under law or at equity.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: August 20, 2024                    Respectfully submitted

                                          By:   */s/ Peter Prieto*

                                          Peter Prieto (FBN 501492)
                                          Matthew P. Weinshall (FBN 84783)
                                          Dayron Silverio (FBN 112174)
                                          **PODHURST ORSECK, P.A.**
                                          One S.E. 3rd Avenue, Suite 2300
                                          Miami, Florida 33131
                                          T. (305) 358-2800
                                          pprieto@podhurst.com
                                          mweinshall@podhurst.com
                                          dsilverio@podhurst.com


                                          Joseph G. Sauder
                                          Joseph B. Kenney
                                          Juliette T. Mogenson
                                          **SAUDER SCHELKOPF LLC**
                                          1109 Lancaster Avenue
                                          Berwyn, PA 19312
                                          Telephone: (888) 711-9975
                                          Facsimile: (610) 421-1326
                                          jgs@sstriallawyers.com
                                          jbk@sstriallawyers.com
                                          jtm@sstriallawyers.com

                                          *Attorneys for Plaintiff*